**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

James Kester, Appellant.

Appellate Case No. 2018-001852

―――――――――――

Appeal From Richland County
Clifton Newman, Circuit Court Judge

―――――――――――

Unpublished Opinion No. 2021-UP-259
Heard May 3, 2021 – Filed July 7, 2021

―――――――――――

**AFFIRMED**

―――――――――――

Dayne Phillips, of Price Benowitz, LLP, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Joshua Abraham Edwards, and Solicitor Byron E. Gipson, all of Columbia, for Respondent.

―――――――――――

**PER CURIAM:** James Kester appeals his convictions for eight counts of first-degree assault and battery and one count of third-degree assault and battery. We affirm.

1. The circuit court did not abuse its discretion in not ordering a competency evaluation after being informed Kester had been found competent to stand trial in a prior evaluation and after observing Kester in a lengthy colloquy regarding his decision to represent himself. *See State v. White*, 364 S.C. 143, 147, 611 S.E.2d 927, 929 (Ct. App. 2005) ("[T]he decision of whether to order a competency examination is within the discretion of the trial judge, whose decision will not be overturned absent a clear showing of abuse of discretion."); *State v. Barnes*, 407 S.C. 27, 35-36, 753 S.E.2d 545, 549-50 (2014) (holding the required competency to waive the right to counsel is the same as that required to stand trial); *McLaughlin v. State*, 352 S.C. 476, 481, 575 S.E.2d 841, 843 (2003) ("The test for competency to stand trial or continue trial is whether the defendant has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as a factual, understanding of the proceedings against him.").

2. We affirm the circuit court's decision to grant Kester's motion to represent himself as Kester was aware of his right to counsel, chose to have his attorneys remain as standby counsel, and the circuit court repeatedly cautioned Kester about the dangers of self-representation. *See State v. Samuel*, 422 S.C. 596, 602, 813 S.E.2d 487, 490 (2018) ("Whether a defendant has knowingly, intelligently, and voluntarily waived his right to counsel is a mixed question of law and fact which appellate courts review de novo."); *State v. Dial*, 429 S.C. 128, 133, 838 S.E.2d 501, 504 (2020) ("The Sixth Amendment to the United States Constitution guarantees an accused's right to the assistance of counsel. A defendant may waive his right to counsel, but he must do so knowingly and intelligently."); *id.* ("For a knowing and intelligent waiver to occur, the defendant must be '(1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation.'" (quoting *Prince v. State*, 301 S.C. 422, 423-24, 392 S.E.2d 462, 463 (1990))); *Samuel*, 422 S.C. at 603-04, 813 S.E.2d at 491 ("Although a defendant's decision to proceed *pro se* may ultimately be to his detriment, such requests 'must be honored out of that respect for the individual which is the lifeblood of the law.'") (quoting *Barnes*, 407 S.C. at 35-36, 753 S.E.2d at 550)).

3. Because Kester does not demonstrate he was prejudiced in regards to his use of peremptory strikes, there is no reversible error. *See State v. Patterson*, 367 S.C. 219, 224, 625 S.E.2d 239, 242 (Ct. App. 2006) ("In order for an error to warrant reversal, the error must result in prejudice to the appellant."); *State v. Rayfield*, 369 S.C. 106, 113-14, 631 S.E.2d 244, 248 (2006) (explaining prejudice

may be presumed in certain cases involving *Batson*[1] challenges but generally a defendant has no right to a particular jury), *abrogated on other grounds by State v. Stukes*, 416 S.C. 493, 787 S.E.2d 480 (2016); *Wilson v. Childs*, 315 S.C. 431, 439, 434 S.E.2d 286, 291 (Ct. App. 1993) ("There is no reversible error in the [e]mpaneling of a jury unless it appears that the objecting party was prejudiced."); *Moore v. Jenkins*, 304 S.C. 544, 547, 405 S.E.2d 833, 835 (1991) ("[W]ith regard to errors in the empaneling of juries, this [c]ourt has previously stated in reviewing such errors that, 'irregularities in the empaneling of the jury will not constitute reversible error unless it affirmatively appears that the objecting party was prejudiced thereby.'" (quoting *S. Welding Works, Inc. v. K & S Constr. Co.*, 286 S.C. 158, 162, 332 S.E.2d 102, 105 (Ct. App. 1985))).

4.  We find the circuit court's *Allen*[2] charge was not unconstitutionally coercive as the circuit court was not made aware of the division of jurors and its charge did not impermissibly address the minority jurors.  Additionally, the charge did not admonish jurors that they *must* reach a verdict, and the charge cautioned jurors they should not give up their opinions simply in order to arrive at a verdict.  *See Green v. State*, 351 S.C. 184, 194, 569 S.E.2d 318, 323 (2002) ("A trial judge has a duty to urge, but not coerce, a jury to reach a verdict."); *Workman v. State*, 412 S.C. 128, 130-31, 771 S.E.2d 636, 638 (2015) ("The four factors adopted by this [c]ourt in *Tucker* [*v. Catoe*, 346 S.C. 483, 552 S.E.2d 712 (2001)], to determine whether an *Allen* charge is unconstitutionally coercive are: (1) Does the charge speak specifically to the minority juror(s)? (2) Does the charge include any language such as 'You have got to reach a decision in this case'? (3) Is there an inquiry into the jury's numerical division, which is generally coercive? [and] (4) Does the time between when the charge was given, and when the jury returned a verdict, demonstrate coercion?"); *Green*, 351 S.C. at 195, 569 S.E.2d at 323-24 (2002) (finding an *Allen* charge appropriate when the charge "adequately and correctly told the jurors they should listen to what the other side had to say; to be open to change one's mind; and to not change one's mind if it would do violence to one's conscience"); *but see State v. Taylor*, 427 S.C. 208, 214, 829 S.E.2d 723, 727 (Ct. App. 2019) ("South Carolina approves the use of a modified *Allen* charge, which must be neutral and even-handed, instruct both the majority and minority to reconsider their views, and cannot be directed at the jurors in the minority."); *Id.* at 218, 829 S.E.2d at 729 (finding the *Tucker* factors are not exclusive and the trial court's failure to emphasize jurors "should not surrender their conscientiously held beliefs simply for the sake of reaching a verdict" in addition to its statements

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[2] *Allen v. United States*, 164 U.S. 492 (1896).

regarding the expense of retrying the case constituted a coercive charge).

5.  We conclude the circuit court's sentencing Kester to the maximum amount of time for each conviction to run consecutively was not an unconstitutional de facto life sentence simply because Kester is an older defendant.  His sentences are parole eligible and his actions of driving a car into a crowd of innocent people warranted significant punishment.  *See State v. Finley*, 427 S.C. 419, 423, 831 S.E.2d 158, 160 (Ct. App. 2019) (stating when considering whether a sentence constitutes cruel and unusual punishment, "this court will not disturb the circuit court's findings absent a manifest abuse of discretion"); *Major v. S.C. Dep't of Prob., Parole & Pardon Serv.* 384 S.C. 457, 465-66, 682 S.E.2d 795, 799-800 (2009) ("A court's final judgment in a criminal case is the pronouncement of the sentence[,] which includes the ability to designate whether sentences run concurrent or consecutive, subject to statutory restrictions."); *Thompson v. S.C. Dep't of Pub. Safety*, 335 S.C. 52, 56-57, 515 S.E.2d 761, 763-64 (1999) (explaining when a drunk driver injured multiple victims in a single car crash, it is "simply incorrect to assert that [the driver] committed only a single offense—he committed only one *type* of offense. . . . [W]e do not believe [the driver] is entitled to be rewarded by concurrent suspensions simply because he fortuitously seriously injured three people in one accident rather than injuring each in a separate accident.").

**AFFIRMED.**

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**